IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

DEC 0 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| SULTAN M. CHOWDHURY,<br>    10402 Heathside Way<br>    Potomac, Maryland 20854<br><br>        Plaintiff,<br>v.<br><br>MARTIN J. GRUENBERG,<br>    ACTING CHAIRMAN,<br>    FEDERAL DEPOSIT<br>    INSURANCE CORPORATION,<br>    550 17th Street, N.W.,<br>    Washington, D.C. 20429-9990,<br><br>        Defendant. | CASE NUMBER 1:05CV02368<br><br>JUDGE: John Garrett Penn<br><br>DECK TYPE: General Civil<br><br>DATE STAMP: 12/09/2005 |

## COMPLAINT

(Discrimination, Hostile Work Environment, Retaliation)

### Introduction

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. Section 2000e *et seq.*, and as further amended by section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, to remedy acts of discrimination in employment practices taken against him because of his race, his color, his national origin, his religion, his gender, and in retaliation for his having engaged in protected civil rights activity by the Federal Deposit Insurance Corporation ("FDIC").

## Jurisdiction

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended by, *inter alia*, the Equal Employment Opportunity Act of 1972, and the Civil Rights Act of 1991, 42 U.S.C. §§2000e-16(c) *et seq.*, and 42 U.S.C. § 1981a. To remedy the discrimination, hostile work environment, and retaliation he suffered at the hands of the FDIC, plaintiff filed the requisite formal administrative EEO claims with the FDIC's EEO Office. A final agency decision was rendered on September 14, 2005, within 90 days of the filing of this complaint with the clerk of court. Accordingly, plaintiff has now exhausted his administrative remedies.

## Venue

3. Venue is proper in the District of Columbia as the actions that form the basis of the claims contained in this case occurred here, plaintiff's personnel records at the FDIC are maintained here, and plaintiff continued to be employed for the FDIC in this judicial district until he was retired on disability caused by the actions complained of herein.

## Parties

4. Plaintiff is a 50-year old Asian male from Bangladesh who has a brown complexion, and is a Muslim. He is a citizen of the United States and a resident of Maryland. He was employed by the FDIC at all time relevant to this complaint until he was granted a disability retirement from the federal service.

5. Defendant Martin J. Gruenberg is the acting Chairman of the FDIC, which is a government corporation within the Executive Branch of the Government of the United States that has had more than 500 employees in 20 or more calendar weeks during the past year. Its acting

Chairman is responsible for the personnel actions, omissions and practices within FDIC and is here sued in his official capacity as head of FDIC only.

### Statement of Facts

6. The plaintiff has been with the FDIC since June 1991 and has a total of 16 years in federal service. He was until his disability retirement a Senior Information Systems Specialist, CG-15 serving in the CDR Implementation Team of the FDIC's Division of Insurance and Research ("DIR"). He had been in that unit since December 2002 when he received a retroactive promotion to the CG-15 level as part of a settlement of a prior EEO civil action.

7. During his many years with the FDIC, plaintiff's job performance had never been an issue and his evaluations had ranged from "superior" to "outstanding." Plaintiff's prior supervisor, James Crum, an Executive Level employee at FDIC, gave him a "Meets Expectation" (on the new FDIC pass/fail "Meets/Not Meets" evaluation system) in October 2003.

8. Plaintiff had always received praise and positive reviews at the FDIC until the appointment of Martin Henning, a younger CG-15 white Christian American, as the Project Manager of the CDR Implementation Team in October 2003. First, Henning, who made his religious difference known to plaintiff, and kept a Bible on his FDIC desk in plain view, gratuitously told plaintiff that he "fired people" and that he "knew" plaintiff's "background" -- meaning that he knew that plaintiff had engaged in prior protected activity (his prior EEO complaint). This occurred in plaintiff's very first one-on-one meeting with Henning in October 2003.

9. Following this initial unpleasant introduction, in November 2003 Henning summarily altered plaintiff's job title from "Project Manager" to "Senior Information Systems Analyst." Later, in March 2004, Henning altered his Position Description ("PD"). Thereafter, Henning changed

plaintiff's work assignments to those that on which none of the other Project Team members wanted to work.

10. In February 2004, Henning denied a monetary Corporate Success Award to plaintiff which would have been a permanent three percent (3%) salary increase to plaintiff for his having made a significant savings for FDIC.

11. Thereafter, Henning began to harass plaintiff by intentionally and falsely announcing in a staff meeting that plaintiff was transferring to another position and that Henning had already hired a replacement. This false and embarrassing announcement occurred in plaintiff's absence in mid-February 2004 when plaintiff was away from the office on a previously approved vacation.

12. In March of 2004, after assigning plaintiff to the systems security role for the Project Team, Henning openly taunted plaintiff in front of two colleagues (Laura Lapin and Susan Koepp) by having plaintiff guess how much of a raise he would get for taking on these significant additional duties. To tease, demean, undermine, and belittle plaintiff in front of his colleagues, Henning indicated that the plaintiff's raise would be "zero percent" -- the percent given only to lowest performers at FDIC.

13. Henning also absurdly claimed that the plaintiff's written communication skills were unacceptable, giving him an unsatisfactory score in a mid-year review on March 31, 2004. The mid-year review was scheduled and canceled several times, and finally held on the very last hour of the very last day allowable. Ultimately, Henning unfairly placed the plaintiff on a Performance Improvement Plan.

14. Additionally, despite plaintiff's exceptional qualifications, he was passed over for each of three Supervisory Information Technology Specialist jobs in March of 2004, when Mark

Brenneman, the Assistant Director of DIRM, selected three lesser qualified younger females. Mr. Brenneman was intimately aware of plaintiff's prior EEO activity at the time he made these selections.

15. As a consequence of the hostile work environment created by his supervisor and FDIC management, plaintiff suffered (and continues to suffer) a major depression and other associated medical and psychological conditions which resulted in his being forced to absent himself from work at the FDIC beginning in November 2004. While he initially obtained advanced sick leave to provide him with full income during his absence, when that advanced sick leave ran out plaintiff was placed on leave-without-pay status for some seven months (approximately January 2005 through July 2005) during which time he was completely devoid of earned income.

16. Based on the major depression and related medical conditions caused by the hostile work environment at the FDIC, plaintiff was ultimately granted disability retirement benefits by the U.S. Office of Personnel Management in a decision made in or about August 2005. Since that point in time, plaintiff has been receiving disability retirement benefits equal to 60 percent of the average of his last three years of service at the FDIC. However, under the disability retirement rules, after one year of benefits, the percentage paid to plaintiff will drop to 40 percent of his last three years with the FDIC.

## Statement of Claims

**Claim I -- Discrimination:**

17. In FDIC's treatment of plaintiff, defendant intentionally violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against plaintiff based on his race, his national origin, his color, his religion, and/or his sex.

18.     As a result of FDIC's unlawful conduct in violating Title VII's prohibition against employment discrimination, plaintiff has suffered and continues to suffer economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, which adversely affected his enjoyment of live and, ultimately, caused the destruction of his career, as well as personal and professional humiliation.

**Claim II -- Retaliation:**

19.     In FDIC's treatment of plaintiff, defendant intentionally violated Title VII of the Civil Rights Act of 1964, as amended, by retaliating against plaintiff because he filed and successfully pursued discrimination claims against FDIC in the past.

20.     As a result of FDIC's unlawful conduct in violating Title VII's prohibition against retaliation for plaintiff's prior protected EEO conduct, plaintiff has suffered and continues to suffer economic losses, lost promotional and bonus opportunities, with attendant loss of pay and other benefits associated with promotions, bonuses and awards for exceptional performance, damage in the form of emotional distress, pain and suffering, which adversely affected his enjoyment of live and, ultimately, caused the destruction of his career, as well as personal and professional humiliation.

<u>**Prayer for Relief**</u>

WHEREFORE, plaintiff prays that this Court order the following relief:

(a)     enter judgment in his favor and against defendant on each of the claims contained in this civil action;

(b)     award plaintiff compensatory damages against defendant to the fullest extent allowable under Title VII, with interest thereon;

(c)     order defendant to formally assign Plaintiff to an appropriate GS-15 supervisory position, retroactive to the earliest date discrimination is found, and hold that position available for him until such time as he is healthy enough to serve in it productively;

(d)     order defendant to provide plaintiff with back pay in an amount equal to the difference between what he would normally been paid (with all benefits included) between November 2004 -- when he was forced to stop coming to work -- and the present, and what he would have earned during that period had he been able to work at his CG-15 level position.

(e)     order defendant to provide plaintiff with front pay (with full benefits, including *e.g.*, 401k plan and retirement credit) equal to the difference between his disability retirement benefits and what he would be earning as an active CG-15 level employee at the FDIC, and to continue that front pay until plaintiff is able to return to active work at his FDIC supervisory position or he reaches the age of 62 years and qualifies for regular retirement benefits.

(f)     order defendant to correct all FDIC records, including plaintiff's Official Personnel Folder ("OPF"), to accord with the relief order by the Court and to purge all references in such documents to this civil action and the administrative EEO complaints that proceeded it;

(g)     enjoin defendant from future retaliation and discrimination against plaintiff;

(h)     award plaintiff his costs of this action and the administrative complaints that preceded it, including reasonable attorneys' fees, with interest thereon, pursuant to 42 U.S.C. Section 2000e-5(k);

(i) award such other and further relief as in the opinion of this Court the interests of justice may require.

### Jury Demand

Plaintiff hereby requests a trial by jury in the instant case on all issues of fact and on questioning pertaining to the amount of damages to be awarded.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO
1225 Eye Street, N.W., Suite 1290
Washington, D.C. 20005
(202) 482-0300

Attorney for Plaintiff