## AFFIDAVIT

WASHINGTON

DISTRICT OF COLUMBIA

I, Sultan M. Chowdhury, race (Asian), color (brown), national origin (Bangladesh), sex (male) age (birth date: October 24, 1955), and retaliation (prior EEO activity), knowing that this statement may be used in evidence, make the following statement freely and voluntarily to Sylvia D. Drummond, who has identified herself to me as a Contract Investigator for the Federal Deposit Insurance Corporation ("FDIC") investigating complaints of discrimination that I filed. I understand that this statement is not confidential and may be shown to interested parties (those with a legal right to know). I hereby solemnly swear or affirm:

1. The Investigator has informed me that the following claims have been accepted for investigation:

    (a) Whether Complainant was discriminated against on the bases of race (Asian), color (brown), national origin (Bangladesh), sex (male), age (birth date: October 24, 1955), and retaliation (prior EEO activity), when on January 23, 2004, he learned that he was not selected for one of multiple Supervisory IT Specialist positions, advertised under Vacancy Announcement Number 2003-HQ-2360, in the Division of Information Resources Management ("DIRM"), Washington, DC.

    (b) Whether Complainant was discriminated against on the bases of race (Asian), color (brown), and national origin (Bangladesh), when on

February 27, 2004, he learned through a global electronic mail that he was not selected for a Corporate Success Award ("CSA") for his initiatives and efforts that contributed to the success of the Corporation and saved the Corporation over $100,000 in calendar year 2003.

2. My current position title is Senior Information Systems Specialist CG-0301-15, Division of Insurance and Research ("DIR"), FDIC. I have held a position in DIR since December 2002, and worked in DIRM prior to December 2002. I have been at the CG-15 grade level since December 1999. I have worked for FDIC for thirteen years, and my total federal government employment is 15 years.

3. My current first level supervisor is Martin Henning, Project Manager, CDR Implementation Team, DIR, FDIC; my second level supervisor is Maureen Sweeney, Deputy Director, DIR, FDIC; and my third level supervisor is Arthur Murton, Director, DIR, FDIC.

4. On October 10, 2003, I applied for the position of Supervisory IT Specialist, CG-2210-15, advertised under Vacancy Announcement Number 2003-HQ-2360, in the FDIC DIRM. On November 14, 2004, I was interviewed for the position by a panel consisting of Mark Brenneman, Assistant Director, DIRM; Ralph Elloser, Associate Director, Division of Finance; and James Baker, Senior Counsel, Legal Division.

5. I had previously worked in DIRM. Although Mr. Brenneman was not my first or second level supervisor when I worked in DIRM, he is likely to be aware of my abilities since I worked in large and high profile projects for the Corporation. When I worked in DIRM, both Messrs. Elosser and Barker were my clients at one time or other, and they should be aware of my abilities. During the interview, Mr.

Brenneman was the only panelist who asked questions; however, all panel members took notes. Mr. Brenneman asked six or seven questions; while I do not recall specifics, the questions seemed to relate to the KSAs in the job announcement. During the thirty-minute interview, I invited members of the panel to ask me questions if they needed further clarification, but no one did so. Overall, I performed well during the interview; Mr. Elloser stated that I was doing well, and I was satisfied with my responses.

6. At the end of the session, Mr. Brenneman indicated that he would let me know around Thanksgiving 2003 whether I was selected, but I never heard from him. I learned from DIRM employees that three other individuals had been selected for the vacant positions. My selection to the position would have been a lateral at grade 15, unlike promotions given to the selectees. There is considerable stake of being put in a managerial position on account of the current organizational set up in the FDIC, and future career potentials.

7. I was better qualified than the selectees in DIRM for many reasons. I have strong managerial and technical skills. I served as a supervisor and as a Project Manager for a long period of time, and managed large projects in information technology (IT). I managed IT projects that serviced both the Division of Finance (DOF) and the Legal Division. I served as a Supervisory Computer Specialist, and managed the Legal Operations Unit in DIRM that supported over 20 IT systems for the Legal Division. I implemented the major system for the FDIC Legal Division, Legal Management Information System (LMIS), which served the comprehensive information management needs of the Legal Division for almost a decade. I also prepared the IT

Plan for the new integrated Legal Information Management System (LIMS). I served as the project manager for the Year 2000 (Y2K) initiative, and the Financial Information Management Systems (FIMS) for the DOF systems. In these roles, I managed 23 mission critical financial systems, oversaw the work of more than 40 people that included FDIC employees and contractors. I managed the largest IT projects in FDIC based on transaction volume, dollar amounts, complexity, and staff. Furthermore, I maintained an excellent working relationship with client management, DIRM management, and line staff. In addition to my experience in FDIC, I worked on several major IT projects that had national and world-wide application in my employment prior to joining the FDIC. My experience, education, and background far exceed that of the selectees. I have 29 years of professional experience in the FDIC, banking, Big-5 CPA firm, and other organizations. I am a CPA, and I have an M.S. in technology management. I conveyed these points to the panelists during the interview.

8. I believe that the selecting official did not recommend and select me for the position at issue because of my race (Asian), color (brown), national origin (Bangladesh), sex (male) age (birth date: October 24, 1955), and retaliation (prior EEO activity). Furthermore, Messrs. Brenneman, Barker, and Elosser were aware of my race, color, national origin, and age because of my physical appearance and my birth date and birthplace are included in my application.

9. Between July 1998 and November 2001, I initiated EEO counseling and/or filed EEO complaints against the FDIC DIRM officials. I believe that the panel members are aware of my prior EEO activity because managers talk among themselves.

10. My current supervisor, Mr. Henning, discriminated against me because of my race (Asian), color (brown), and national origin (Bangladesh), when he did not recommend me for a CSA. Mr. Henning became my supervisor in October 2003. When he came on board, he told me that he knew my background, but would not reveal the source of his information. I believe Mr. Henning has discriminatory animus against me. Within a few weeks after he became my supervisor, he initiated personnel action to change my position title from a Project Manager to that of a Senior Information Systems Specialist without good reason. About the same time, he reassigned me to work that were less challenging, notwithstanding my initiatives in making substantial progress in the task that I was working on.

11. On January 9, 2004, at Mr. Henning's request for staff input regarding 2003 CSA recommendations, I emailed a memorandum outlining my important contributions that met the CSA nomination criteria (business results, competency, working relationship, and learning and development). I submitted a copy of the memorandum for inclusion in the investigative record. As outlined in the memorandum, I made many important contributions to the success of the Corporation that merited award of a CSA. One of the more noteworthy contributions (related to the business results criterion of the CSA) resulted from my direct intervention in the xBAT development contract wherein I saved the FDIC more than $100,000. Specifically, based on my analysis of the contract, I required the contractor to provide deliverables without issuing additional task orders for additional costs. He did not discuss my contributions with me. Instead of recognizing my contributions, Mr. Henning recommended other Caucasian employees for the CSA. Incidentally, one of the two

CSA recipients on Mr. Henning's recommendation was in the CDR team for only six months in 2003. I was the team lead for this person, and had organized the inter-agency project team that he was on.

12. Mr. Henning was incorrect when he explained to the EEO Counselor that during 2003 I performed my duties in a manner that was expected of employees in my position and grade level. During 2003, I performed the duties that had been previously performed by another executive level employee, Bill Schickert. I took initiatives beyond the call of normal duties that enhanced the interests of the FDIC.

13. Throughout my career with the FDIC, I have been a high performer and received awards and accolades for superior performance. This is the first year that I have not received a pay increase based on performance.

14. I believe discrimination is at issue, because Mr. Henning recommended awards for Caucasian employees whose contributions did not equal mine.

15. As a remedy to the discrimination I have suffered, I seek a managerial position, retroactive to the date when lesser-qualified employees were selected for the supervisory positions in DIRM. I also seek retroactive approval of a CSA, attorney fees, compensatory damages, as appropriate, and assurance from the Corporation that I will not be subjected to reprisal because I pursued my rights under the Equal Employment statutes. I will supplement the record at a later date with proof of compensatory damages suffered that are related to the discrimination at issue in this complaint.

_____
Signature

Signed and sworn to before me
On this 23rd day of AUGUST, 2004
At ALLIANCE BANK  11700 PLAZA AMERICA DR #180   RESTON VA 20190
_____
Neutral witness, notary or investigator

My Commission Expires October 31, 2006

# PRIVACY ACT NOTICE TO COMPLAINANT
# FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to U.S. Federal Deposit Insurance Corporation activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____
Signature of Interviewer

_____  7/12/04
Signature of Complainant

July 12, 2004
Date

Washington, DC
Place

## INVESTIGATOR'S MEMORANDUM

FROM:  Sylvia D. Drummond
       Contract Investigator

SUBJECT:  Complainant's Rebuttal Opportunity

DATE:  September 8, 2004

On August 27, 2004, Complainant was provided copies of affidavits for all involved officials and informed that if he wished to offer rebuttal statements, he should do so no later than September 3, 2004. Investigator also informed Complainant that if his statements were not received by September 3, 2004, the investigative file would be submitted without them. To date, Complainant has not responded.