
Page 257

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
SULTAN M. CHOWDHURY,           :
      Plaintiff,               :
                               :
   v.                          : Civil Action
                               : Number:
SHEILA C. BAIR,                :
      Defendant.               : 05-2368 (RMU)
                               :
- - - - - - - - - - - - - - - - x

                    Arlington, Virginia
                    Wednesday, April 30, 2008

Resumed Deposition of
                    MARTIN HENNING
a witness of lawful age, taken on behalf of the
Plaintiff in the above-entitled action, before Leanne
M. Krivonak, Notary Public in and for the Commonwealth
of Virginia, Registration Number 180129, in the offices
of Federal Deposit Insurance Corporation, 3501 Fairfax
Drive, Arlington, Virginia, commencing at 2:57 p.m.

            Diversified Reporting Services, Inc.
                      (202) 467-9200

Page 258

APPEARANCES:

On Behalf of the Plaintiff:
    DAVID H. SHAPIRO, ESQ.
    JAMES E. SIMPSON, ESQ.
    Swick & Shapiro
    1225 Eye Street, N.W.
    Suite 1290
    Washington, D.C. 20005
    (202) 842-0300

On Behalf of the Federal Deposit Insurance Company:

    TINA A. LAMOREAUX, ESQ.
    Federal Deposit Insurance Corporation
    legal Division
    Room D-6138
    3501 Fairfax Drive
    Arlington, Virginia 22226
    (703) 562-2304

Also Present:
    Sultan M. Chowdhury

Page 259

14  -- FFIEC                                262
       Sensitivity Assessment
       Questionnaire
15  -- Handwritten Notes/                   273
       Mid-Year Review
       by Martin Henning
16  -- Memo to Sultan Chowdhury             294
       from Martin Henning,
       4/9/2004
17  -- Handwritten notes of                 299
       meeting with Steve
       Coleman, 7/30/04
18  -- Handwritten one-on-one               308
       with Sultan, 7/30/04
19  -- Notice of Unsatisfactory             318
       Performance -- PIP
       8/18/04
20  -- FDIC Transcript of                   349
       Martin Henning

Page 260

1              PROCEEDINGS
2    Whereupon,
3              MARTIN HENNING
4    was recalled as a witness and, having been first duly
5    sworn, was examined and testified as follows:
6         MS. LAMOREAUX: Mr. Shapiro, before you
7    start --
8         MR. SHAPIRO: Sure.
9         MS. LAMOREAUX: I wanted to do this on the
10   record if you may.
11        You asked to see these books that Mr. Henning
12   had on his desk and asked that that be brought in.
13        MR. SHAPIRO: Not --
14        MS. LAMOREAUX: Yes. We've brought that in
15   for you to inspect today.
16        MR. SHAPIRO: I don't want to do this on the
17   record because I'm on limited amount of time.
18        MS. LAMOREAUX: Okay. Well, I just want --
19   want it on the record that it is being produced today
20   for your inspection.
21        MR. SHAPIRO: Fabulous. That's it?
22        MS. LAMOREAUX: If you want to put it on the

Page 329

1  over and approve it before it gets sent up?
2      MS. LAMOREAUX: Object to the form.
3      THE WITNESS: I do look over the work of my
4  team but --
5      BY MR. SHAPIRO:
6   Q  Don't you edit it?
7   A  Sometimes I edit the work of my team, yes.
8   Q  And so then you're a writer; aren't you? If
9  you edit, you write and change? You work
10 on -- whatever you work on and you edit, you work on it
11 yourself. Correct?
12  A  You asked several questions I think. Yes, I
13 write things. I edit documents.
14  Q  Well, was the principal writer on the Security
15 Test and Evaluation Recommendation, Sultan Chowdhury?
16  A  Was the principal on the Security Test and
17 Evaluation, which is --
18  Q  The principal writer from your team?
19  A  I believe that's right, yes.
20  Q  Wasn't he the principal writer on the SAQ?
21  A  Yes.
22  Q  Wasn't he the principal writer on the

Page 330

1  Financial Summary?
2   A  Yes.
3   Q  All of those documents were completed
4  satisfactorily; weren't they? They were submitted, and
5  they were completed satisfactory after several drafts;
6  correct?
7      MS. LAMOREAUX: Object to the form.
8      THE WITNESS: In these cases, similar to the
9  example we just gave, eventually they were completed
10 satisfactorily, often with the work of others in
11 addition to the principal.
12     BY MR. SHAPIRO:
13  Q  Excuse me. Wasn't it always with the work of
14 others because this was a team approach, and there were
15 people from other -- outside of your supervision who
16 worked on these documents as well?
17     That's certainly true of the SAQ. Correct?
18     MS. LAMOREAUX: Object to the form.
19     THE WITNESS: You're asking did others work on
20 the SAQ --
21     MR. SHAPIRO: Yes.
22     THE WITNESS: -- before it was acceptable?

Page 331

1      MR. SHAPIRO: Who were outside your
2  supervision.
3      THE WITNESS: Did other people work on the SAQ
4  outside my supervision before it was acceptable?
5      You know, I don't recall exactly who worked on
6  it to get it to an acceptable form. Again, in that
7  case I was certainly somebody who reviewed and provided
8  editing feedback on that document -- on the SAQ.
9      MR. SHAPIRO: Let me see that Bible. May I?
10     MS. LAMOREAUX: I'd like to note for the
11 record that Mr. Shapiro is looking at a Bible that the
12 FDIC Counsel, Victor George, agreed to produce at Mr.
13 Henning's last deposition for the record.
14     The book that Mr. Shapiro is looking at
15 contains no writing on its cover, its spine, or the
16 back cover. It is a leather-bound document, maroon,
17 red-brown in color.
18     BY MR. SHAPIRO:
19  Q  Is this the Bible that you kept on your desk?
20  A  Yes.
21  Q  When did you keep it on your desk? During
22 what period of time?

Page 332

1   A  Certainly when I was on the CDR project team.
2   Q  Until when?
3   A  Till when? Let's see. I'm trying to think if
4  I ever put it on my desk at the -- when I moved. I
5  moved from the building where I worked on the CDR
6  project team when the project was completed. I -- it
7  certainly was off my desk then -- when I moved.
8      I'm trying to remember if I put it on my desk
9  at my new office or not.
10  Q  Come on, now. I'm not talking about taking it
11 off your desk because you moved. It remained on your
12 desk in the FDIC -- wherever that desk might have
13 been -- until when?
14     You told me last time that you removed it.
15 You no longer have it on your desk.
16  A  That's true.
17  Q  When did you remove it?
18  A  I don't -- are you looking for a specific day
19 that I took it off my --
20  Q  How did you come to remove it?
21  A  How did I come to remove it?
22  Q  Why did you remove it from your desk?