## AFFIDAVIT

WASHINGTON

DISTRICT OF COLUMBIA

I, Martin Henning, race (Caucasian), and national origin (American), knowing that this statement may be used in evidence, make the following statement freely and voluntarily to Sylvia D. Drummond, who has identified herself to me as a Contract Investigator for the Federal Deposit Insurance Corporation ("FDIC") investigating complaints of discrimination filed by Sultan M. Chowdhury ("Complainant"). I understand that this statement is not confidential and may be shown to interested parties (those with a legal right to know). I hereby solemnly swear or affirm:

1. The Investigator has informed me that the following claim has been accepted for investigation:

    "Whether Complainant was discriminated against on the bases of race (Asian), color (brown), and national origin (Bangladesh), when on February 27, 2004, he learned through a global electronic mail that he was not selected for a Corporate Success Award ("CSA") for his initiatives and efforts that contributed to the success of the Corporation and saved the Corporation over $100,000 in calendar year 2003."

2. My position title is Project Manager, CG-15, Central Data Repository ("CDR") Implementation Team, Division of Insurance and Research ("DIR"), FDIC. I have held my current position since October 2003, and have worked with FDIC since 1991.

SOF - EXHIBIT M

3. I am Complainant's first level supervisor. My first level supervisor is Maureen Sweeney, Deputy Director, Risk Analysis and Banking Activities, DIR, FDIC; and my second level supervisor is Arthur Murton, Director, DIR, FDIC.

4. I believe Complainant's national origin to be Indian.

5. On December 29, 2003, I E-mailed five employees under my direct supervision seeking input regarding 2003 contributions they might want to have considered for a CSA. There were about ten (10) employees on the CDR Implementation Team. While I was the CDR Implementation Team, Project Manager, some of the employees assigned to the project were temporary and not under my direct supervision.

6. I recommended two employees for CSAs, a CG-14 and a CG-15. I do not know their races/national origins. They are both pioneers on the CDR project and made more substantial contributions than Complainant in the areas of "business results" and "competency." They were key drivers in the initiation of the CDR Project and are responsible for major innovations and the successful application of an industry standard to a specific FDIC business process. Their innovation and creativity far surpassed Complainant's and they developed unique ideas regarding the execution of the CDR Project whose goal is to improve the way banks report financial information to the FDIC, Office of Comptroller of the Currency (OCC), and to the Federal Reserve System. One of the recommended individuals has a very strong technical background and is the subject matter expert who provides key technical support to the three participating Federal agencies, including the Federal Reserve, OCC, and FDIC. The other employee is strong in the business arena, and combined that strength with

his technical knowledge to successfully develop strategies and design systems to process and disseminate information to the business community.

7. Complainant submitted a list of contributions as his input for consideration. I reviewed the information the Complainant had submitted. I also consulted his former supervisor James Crum, who had supervised the Complainant for the majority of the review period. We both agreed that Complainant's contributions did not meet the criteria for nomination for a CSA. I also consulted with and received input from Mr. Crum regarding other CDR Project employees he supervised in the 2003 review period. I recommended two of the individuals recommended by Mr. Crum.

8. As a former Section Chief for another office, I was asked to rank my former employees to determine which ones should be considered for CSAs for the same 2003 contributions period.

9. Complainant was only doing what is expected of all employees in his position when, according to him, he saved the Corporation more than $100,000 by preventing a vendor from charging for services that should have been included in an original task order. We are all expected to point out such problems and to insure that the Corporation gets its money's worth. Complainant did a good thing, but it was part of his job and the kind of good work that occurs during the course of business. In contrast, money saving efforts that would deserve a nomination for an award might involve an individual who developed an innovative idea, introduced it, and carried it through to completion.

10. I have no knowledge of and no basis to believe the assertion that Complainant performed work that was previously performed by an Executive Level employee.

Complainant performed the duties of a Senior Systems Specialist, serving as a team leader, running the lab, and overseeing input in the system.

11. I did not discriminate against Complainant as alleged. My nominations for CSAs were consistent with the guidelines and were made without consideration of any illegal factors.

_____Martin. Henning_____
Signature

Signed and sworn to before me
On this __19__ day of __August__, 2004
at __Reston__, VA

_____
Neutral witness, notary or Investigator

## PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to the Federal Deposit Insurance Corporation activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_[signature]_
Signature of Interviewer

_[signature]_ Martin Henning
Signature of Affiant

July 12, 2007
Date

Washington D.C.
Place



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                Office of Diversity and Economic Opportunity

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _Martin Henning_    DATE: _7/12/04_