**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SULTAN M. CHOWDHURY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-2368 (RMU) |
| | : | | |
| v. | : | Document No.: | 32 |
| | : | | |
| SHEILA C. BAIR, Chairman, | : | | |
| Federal Deposit Insurance Corporation, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Denying in Part the Defendant's Motion for Summary Judgment and Ordering Further Briefing on the Plaintiff's Hostile Work Environment Claim

## I.    INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff, a Bangladeshi Muslim and former Federal Deposit Insurance Corporation ("FDIC") employee, brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, against the FDIC[1] for discrimination, retaliation and hostile work environment. The court determines that the plaintiff has stated material facts in dispute regarding his Title VII discrimination and retaliation claims but that neither side has provided adequate briefing on the plaintiff's hostile work environment claim. Accordingly, the court denies the defendant's motion with respect to the discrimination and retaliation claims and orders further briefing on the hostile work environment claim.

---

[1]       The original defendant to this action, Martin J. Gruenberg, was the acting Chairman of the FDIC when this action was instituted. Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes the current FDIC Chairman, Sheila C. Bair, for Gruenberg. Fed. R. Civ. P. 25(d) (stating an "officer's successor is automatically substituted as a party" and that "[l]ater proceedings should be in the substituted party's name").

## II.     FACTUAL & PROCEDURAL BACKGROUND

The plaintiff began working at the FDIC in June of 1991 as a Senior Computer Specialist/Project Manager at a Grade CG-0334-14.  Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Statement") ¶ 1; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 3.  In 1998 the plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging that FDIC official Mark Brenneman unlawfully failed to promote the plaintiff in favor of lesser qualified candidates based on the plaintiff's race, religion and national origin.  *Id.* at 5.  After filing a complaint in this court, the parties reached settlement in 2002, resulting in the plaintiff's promotion to a Grade CG-15 position.  Def.'s Statement ¶ 3; Pl.'s Opp'n at 3.

In the instant case, the plaintiff alleges that he was discriminated against because of his race, religion, gender, age and color; that he was retaliated against for filing the 1998 EEO complaint; and that his supervisor, Mark Henning, created a hostile work environment.  *See generally* Compl.; Pl.'s Opp'n.[2]  Specifically, the plaintiff believes that in 2003 – approximately twelve months after the settlement of his first complaint – Brenneman passed him over for a Supervisory IT Specialist position in retaliation for filing the complaint.  Pl.'s Opp'n at 5-7.  Later that year, after Henning became his supervisor, the plaintiff was not nominated for a Corporate Success Award ("CSA").  *Id.* at 10-12; Def.'s Mot. at 3.  Henning also began critiquing the plaintiff's writing skills, which eventually led, in 2004, to Henning placing the plaintiff on a performance improvement plan ("PIP").  Pl.'s Opp'n at 14-18; Def.'s Mot. at 4-5.  Henning also changed the plaintiff's job title from "Project Manager" to "Senior Information

---

[2]      Because the plaintiff does not clearly break down the facts by legal theory, e.g., discrimination, retaliation and hostile work environment, *see generally* Compl.; Pl.'s Opp'n, the court attempts in the first instance to decipher the factual claims and apply them to the appropriate law.

Systems Analyst." Pl.'s Opp'n at 9; Def.'s Reply at 24. The plaintiff additionally alleges that Henning "sabotaged" his efforts to effectively participate in the Internal Jobs Rotation Program ("IJRP"). *Id.* at 11. The plaintiff contends that Henning undertook the aforementioned conduct for discriminatory and retaliatory reasons. *See generally* Pl.'s Opp'n.

The plaintiff further asserts that Henning created a hostile work environment by referring to the Central Data Repository ("CDR") team (to which both the plaintiff and Henning were assigned) as a "Christian family," *id.* at 8, and, shortly after becoming the plaintiff's supervisor, telling the plaintiff "I have fired people" and "I know your background," which the plaintiff understood to mean that Henning knew about the plaintiff's previous EEO complaint, *id.* at 8. Henning also left a copy of the plaintiff's PIP face up on the plaintiff's chair and in the office copy machine where "anyone could see it." *Id.* at 15. According to the plaintiff, he was the only person on the team to report to someone other than Henning (and someone at his same grade level), and the only person at his grade level who was assigned work that an assistant would normally handle. *Id.* at 27. The plaintiff recalls Henning announcing in front of co-workers that the plaintiff would not be receiving a raise and would be leaving the CDR team. *Id.* Lastly, the plaintiff submits that Henning admitted to intentionally hindering the plaintiff's attempts to rotate to another division or team through the IJRP. *Id.* at 10-11.

The defendant now moves for summary judgment stating that the plaintiff has either failed to allege that the defendant took adverse actions against him or failed to show that the defendant's asserted nondiscriminatory and non-retaliatory reasons were merely pretextual. *See generally* Def.'s Mot. As to the plaintiff's hostile work environment claim, the defendant appears to argues that, because of the plaintiff's medical and psychological history, the plaintiff has not demonstrated that his work environment interfered with his work performance. *Id.* at 28-

3

31.  The plaintiff opposes the motion, arguing that there are material facts in dispute as to all of

his claims.  *See generally* Pl.'s Opp'n.  The court turns now to the parties' arguments.

## III.    ANALYSIS

### A.    Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B.    Adverse Employment Actions

### 1.    Legal Standard for Adverse Employment Actions

To demonstrate employment discrimination under Title VII, a plaintiff must have suffered an employment action that had "materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment . . . such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Within the context of Title VII, an "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,

761 (1998)).  The action must result in "objectively tangible harm, " *Forkkio*, 306 F.3d at 1131, generally characterized by "direct economic harm," *Burlington Indus., Inc.*, 524 U.S. at 762.

In some instances, a plaintiff's claims will survive even if the alleged harm is speculative. For example, "hiring, firing, failing to promote, [and] reassignment with significantly different responsibilities . . . each significantly changes an employee's status [and] . . . conclusively presumed to be adverse employment actions, even if the alleged harm is speculative." *Douglas v. Preston*, 2009 WL 673569, at *2 (D.C. Cir. Mar. 17, 2009) (internal quotation omitted).  On the other hand, "[f]or employment actions that do not obviously result in a significant change in employment status . . . an employee must go the further step of demonstrating how the decision nonetheless caused . . . objectively tangible harm." *Id.*  This Circuit has held that the harm resulting from a poor performance evaluation by itself is generally too speculative, but if a bonus is dependent on that evaluation, objectively tangible harm is shown.  *See Russell v. Principi*, 257 F.3d 815, 818-19 (D.C. Cir. 2001).

In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).  Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

**2.     The Plaintiff Has Sufficiently Alleged Adverse Actions[3] and**

---

[3]     Because all of the adverse actions alleged by the plaintiff are employment actions, for the purposes of the following analysis, unless otherwise stated, the court does not distinguish between adverse *employment* actions in the discrimination context, *see Forkkio*, 306 F.3d at 1131,

**Conceded that the CSA Was Not an Adverse Action**

The plaintiff alleges five distinct adverse actions: (1) not selecting him for one of the Supervisory IT Specialist positions, Pl.'s Opp'n at 6-7; (2) failing to nominate him for a CSA, *id.* at 10; (3) changing his job title from "Project Manager" to "Senior Information Systems Specialist," *id.* at 9; (4) blocking his participation in the IJRP, *id.* at 11; and (5) placing him on a PIP, *id.* at 14-18.  The defendant argues that not being nominated for a CSA and placing the plaintiff on a PIP are not adverse actions.  Def.'s Mot. at 11-15.  The defendant does not take a position on the change in the plaintiff's job title or on the alleged blocking of the plaintiff's participation in IJRP, *see generally id.*, and agrees that denying the plaintiff a Supervisory IT Specialist position is an adverse action, *id.* at 15.  As the plaintiff fails to challenge the defendant's argument that not being nominated for a CSA was not an adverse action, that point is conceded.[4]  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not addressed are treated as conceded).

Thus, there are only two acts whose characterization as "adverse actions" the parties' contest: changing the plaintiff's job title from "Project Manager" to "Senior Information Systems Specialist" and placing him on a PIP.  As to the change in the plaintiff's job title, the defendant contends that the terms "Project Manager" and "Senior Information Systems Specialist" are just informal titles.  Def.'s Reply at 24.  According to the defendant, the plaintiff's actual job title was "Senior Computer Specialist," throughout the relevant period, as evidenced by his 1998 through 2003 performance appraisals.  *Id.* (referring to Pl.'s Opp'n, Ex. 4-7, 16).  The defendant,

---

and *materially* adverse actions in the retaliation context, *see Baloch*, 550 F.3d at 1198 n.4.

[4]     The court notes that the plaintiff spends a significant amount of time arguing the substantive reasons why he should have received the award, Pl.'s Opp'n at 10, but does not dispute the defendant's assertion that non-receipt of the CSA is not an adverse action, *see generally id.*

however, contradicts this assertion in its motion by referring to the plaintiff as a "Grade CG-15 *Senior Information Systems Specialist*." Def.'s Mot. at 1, 2 (emphasis added). The practical distinction between informal and formal job titles is not addressed by the defendant, *see generally* Def.'s Mot.; Def.'s Statement; Def.'s Reply, nor does the plaintiff address this argument specifically, as the defendant raises it for the first time in its reply. *See generally* Pl.'s Opp'n. The plaintiff does, however, indicate that just prior to receiving his new job title, his duties changed and he was assigned the work of a "grade 7 or 8 employee[]." *Id.* at 9. Because a change in duties or tasks can be an adverse action, the court concludes that the plaintiff has sufficiently met this prong of the analysis. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (observing that "one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable" even when both sets of duties fall under that employee's job description). Moreover, "ordinarily [courts] will not consider arguments raised for the first time in a reply brief." *Pa. Elec. Co. v. Fed. Energy Regulatory Comm'n*, 11 F.3d 207, 209 (D.C. Cir. 1993).

     As to placing the plaintiff on a PIP, the defendant contends that, because the PIP "did not result in any economic loss[,] . . . change in pay, grade, benefits or duty status," it is not an adverse employment action. Def.'s Mot. at 15. The plaintiff alleges that being placed on a PIP was an adverse employment action because Henning told him that he could be terminated if the requirements of the PIP were not satisfied, making termination more likely than if he were not on the PIP. Pl.'s Opp'n, Ex. 3 ("Pl's 2004 Affidavit") ¶ 20. Generally, "placement on a PIP is not, in and of itself, an adverse employment action," *Oshiver v. Norton*, 2005 WL 3454336, at *13 (D.D.C. Dec. 16, 2005) (citing *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)), rather

placement on the PIP must have *resulted in* an adverse action, typically a change in the plaintiff's grade or salary, *see Brown v. Brody*, 199 F.3d 446, 457-58 (D.C. Cir. 1999).  The plaintiff realized no adverse employment consequences of placement on the PIP, therefore, it was not an adverse employment action in the discrimination context.

The court next looks to whether placement on a PIP can constitute a materially adverse action sufficient to support of a retaliation claim.  *See Baloch*, 550 F.3d at 1198.  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington N.*, 548 U.S. at 69.  The standard the court applies is whether a "reasonable employee would have found the challenged action materially adverse."  *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007).  Typically, this standard is met when the plaintiff has shown that the adverse action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).  The defendant cites *Baloch v. Norton* for the proposition that "the filing of a complaint after an alleged instance of retaliation militates against a conclusion that retaliation occurred, as it demonstrates that the filer was not deterred from protecting his rights."  517 F. Supp. 2d 345, 361 (D.D.C. 2007).  *Baloch*, however, is factually distinguishable from this case, in that the plaintiff in *Baloch* filed five EEO complaints over a three year period, four of those in the same year and all in reference to the same supervisor. *Id*.  Here, the plaintiff filed his first EEO complaint in 1998 regarding treatment by Brenneman, Pl.'s Opp'n at 3, and filed his second – and last – EEO complaint in 2004 regarding treatment by Henning, Def.'s Statement ¶ 23.  Furthermore, the standard applied by the court is a *reasonable* person standard.  *See e.g., Wiley*, 511 F.3d at 161 (determining that a materially adverse action is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination");

*Rochon*, 438 F.3d at (same); *Baloch*, 517 F. Supp. 2d at 361 (same).  Because the court concludes

that placement on a PIP could dissuade a reasonable employee from making a charge of

discrimination, placing the plaintiff on a PIP was a materially adverse action sufficient to support his

claim of retaliation.  As a result, the court deems that the following conduct constitutes adverse

actions: not selecting the plaintiff for one of the Supervisory IT Specialist positions, changing his

job title from "Project Manager" to "Senior Information Systems Specialist," blocking his

participation in the IJRP and placing him on a PIP.

### C.    Title VII Discrimination & Retaliation

### 1.    Legal Standard for Title VII Discrimination & Retaliation

In Title VII cases involving the assertion of non-discriminatory or non-retaliatory reasons

for the contested action, the Supreme Court set forth a standard by which to determine the

plaintiff's success in making out a prima facie case.  *McDonnell Douglas v. Green*, 411 U.S.

792, 802 (1973)); *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003); *Morgan v. Fed.*

*Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell*

*Douglas* framework to a Title VII retaliation claim).   This Circuit has recently addressed this

burden shifting dance in the case of *Brady v. Office of the Sergeant at Arms, U.S. House of*

*Representatives*.  520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a

largely unnecessary sideshow").  Although this *McDonnell Douglas* examination of transferred

burden may well provide the framework for testing the adequacy of Title VII cases which do not

involve the asseveration of non-discriminatory explanations, when the defense maintains

exculpatory reasons for the action contested, the Circuit directs the trial court to examine the

totality of the circumstances in judging the adequacy of the plaintiff's claim. *Aka v. Washington*

*Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998).  In other words "[h]as the employee produced

10

sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin [or retaliated against the employee for engaging in protected activity]?" *Brady*, 520 F.3d at 494.

Looking at all the evidence as a composite, the court must decide whether the jury could "infer discrimination [or retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory [or retaliatory] or that the non-discriminatory [or non-retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). This holistic approach to weighing the adequacy of plaintiff's case is particularly important in assessing the merits of a motion for summary judgment.

The strength of the plaintiff's retaliation claim, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-retaliatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff could not establish pretext because "she [was] unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection).

**2.     The Plaintiff Has Produced Sufficient Evidence to Survive Summary Judgment on His Title VII Discrimination and Retaliation Claims**

The defendant asserts numerous non-discriminatory/retaliatory reasons for the adverse actions complained of by the plaintiff, *see* generally Def.'s Mot, and, therefore, the court's analysis focuses on whether the plaintiff has provided sufficient evidence from which a reasonable jury could determine that the defendant's asserted reasons are pretextual, *Brady*, 520 F.3d at 494. The following actions are at issue: (1) denying the plaintiff one of the Supervisory IT Specialist positions; (2) changing his job title from "Project Manager" to "Senior Information Systems Specialist"; (3) blocking his participation in the IJRP; and (4) placing him on a PIP.

The defendant points out that the hiring process for the Supervisory IT Specialist Positions included more than just Brenneman's input; Ralph Elosser, the Assistant Director in the Division of Finance, and James Barker, Senior Counsel in the Legal Division, were also part of the selection panel. Def.'s Mot. at 5. No one in the three-member panel ranked the plaintiff in his top five choices for the job. *Id.* at 32. Because the plaintiff has not alleged any discrimination or retaliation on the part of Elosser or Barker, *see generally* Compl., the defendant argues that the final hiring choices could not have reasonably stemmed from any discriminatory or retaliatory intent on the part of Brenneman. Def.'s Mot. at 32. The plaintiff rebuts this argument by asserting that he should not have been subjected to the interviewing process at all, but instead should have been eligible for a non-competitive, lateral transfer, Pl.'s Opp'n, Ex. 40 ("Merit Promotion Roster"), and Brenneman, the "selecting official" charged with making the ultimate placement decision, acted in a retaliatory manner by not awarding the plaintiff one of those positions, Pl.'s Opp'n at 5-6. The evidence provided by the plaintiff does tend to indicate that the plaintiff was eligible for a lateral transfer without being subjected to the interviewing process. Merit Promotion Roster at 2 (specifying that the plaintiff "may be considered for the [Supervisory IT Specialist position] as an exception to merit promotion in

accordance with FDIC Circular 2110.2").  The internal processes and methods by which such transfers are made are not addressed by the defendant.  *See generally* Def.'s Mot; Def.'s Reply. Thus, drawing an inference in favor of the plaintiff, the court determines that a reasonable jury may determine that Brenneman did not adhere to FDIC internal processes for the purpose of retaliating against the plaintiff.  *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 349-350 (D.D.C. 2005) (holding that an employer's failure to follow its own procedures created a material issue of fact).

The other three employment actions – the change in the plaintiff's job title, his blocked participation in the IJRP and his placement on a PIP – are based on Henning's treatment of the plaintiff.  *See* Pl.'s Opp'n at 8-12, 14-18.  The defendant asserts that the job titles referred to by the plaintiff were only informal, that his real job title never changed and that Henning changed many employees' job titles when he became the CDR supervisor.  Def.'s Reply at 24.  The defendant does not address the plaintiff's allegation that Henning "sabotaged" his attempts to obtain other positions through the IJRP.  *See generally* Def.'s Mot.; Def.'s Reply.  Claiming that other CDR team members had noticed problems with the plaintiff's writing prior to the plaintiff being placed on a PIP, the defendant argues that the PIP was justified.  Def.'s Mot at 22.

To contradict all of the nondiscriminatory reasons proffered by the defendant, the plaintiff asserts under oath that Henning made direct statements to him suggesting his discriminatory and

retaliatory intent,[5] Pl.'s Opp'n, Ex. 41 ("Pl.'s Dep.") at 121 (indicating that Henning stated "we

are a Christian family" knowing that the plaintiff is Muslim) and 106 (recalling that Henning

told the plaintiff that he scrutinized the plaintiff's work because he had filed an EEO complaint).

Because the bulk of the plaintiff's proffered evidence tending to show discriminatory and

retaliatory intent exists in his affidavit and deposition testimony and is contradicted by the

defendant's assertions, a credibility determination is required.  *House v. Bell*, 547 U.S. 518, 559-

60 (2006) (explaining that, in deciding a summary judgment motion the court "does not assess

credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

for trial" (citing *Schlup v. Delo*, 513 U.S. 298, 332 (1995)).  As such, these are issues for a jury

to decide.

### D.   Hostile Work Environment

### 1.   Legal Standard for Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect

to compensation, terms, conditions, or privileges of employment because of race, color, religion,

sex, or national origin.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Toward that end, an

employer may not create or condone a hostile or abusive work environment that is

---

[5]       The defendant argues that the temporal proximity – twelve months – between the plaintiff's
protected action and the alleged retaliation is too attenuated to establish a causal link.  Def.'s Mot.
at 15-16.  In this case, however, because the plaintiff offers direct evidence of retaliation –
Henning's comment that he was scrutinizing the plaintiff's work because the plaintiff had
previously filed an EEO complaint, Pl.'s Opp'n at 2 – temporal proximity is not an issue.  *See
Aka*, 156 F.3d at 1289 n.4 (holding that a plaintiff can survive summary judgment upon a
showing of intentional retaliation); *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 290
(D.D.C. 2007) (determining that a two-year gap between the plaintiff's protected activity and
alleged retaliation did not defeat the plaintiff's claim when the plaintiff presented direct "record
evidence that . . . [the employer] retaliated against other [employees] who tried to expose the . . .
discriminatory treatment").

14

discriminatory.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  Such an

environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation,

ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'"  *Singletary v. District of Columbia*,

351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67).  On the other hand,

"[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work

environment – an environment that a reasonable person would find hostile or abusive – is

beyond Title VII's purview."  *Harris*, 510 U.S. at 21.  Thus, to determine whether a hostile work

environment exists, the court looks to the totality of the circumstances, including the frequency

of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an

employee's work performance.  *Id*. at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88

(1998).  In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d

365, 377 (2d Cir. 2002)).

### 2.    The Court Orders Additional Briefing
### on the Plaintiff's Hostile Work Environment Claim

The plaintiff alleges that Henning created a hostile work environment by stating "we are

a Christian family," when, as perceived by the plaintiff, he was referring to the CDR team;  Pl.'s

Dep. at 121; and shortly after becoming the plaintiff's supervisor, telling the plaintiff, "I have

fired people" and "I know your background," which the plaintiff understood to mean that

Henning knew about his previous EEO complaint, *id.* at 104-106.  The plaintiff also contends

that, pursuant to Henning's requirement, the plaintiff was the only person on the CDR team to

report to someone other than Henning, Pl.'s Opp'n, Ex. 43 ("Henning Dep.") at 106-108 (stating

that the plaintiff reported to a co-worker who was at the same level (CG-15) as the plaintiff); that

Henning assigned the plaintiff work that an assistant would normally handle, Pl.'s 2004 Aff. ¶ 4;

and that Henning told the plaintiff, in front of co-workers, that he would not be receiving a raise,

and incorrectly and intentionally announced that the plaintiff would be leaving the CDR Team,

*id.* ¶ 14.  According to the plaintiff, Henning admitted that he had intentionally frustrated the

plaintiff's attempts to move to another division.  *Id.* ¶ 34.  Henning also left the plaintiff's PIP

face up on his chair and another copy in the shared office copy machine.  *Id.* ¶¶ 24-25.

Henning's treatment, the plaintiff submits, eventually led to the plaintiff's retirement from the

FDIC.  Pl.'s Opp'n at 27.

To succeed on a hostile work environment claim a plaintiff must demonstrate that his

work environment was "objectively hostile" by describing the frequency, severity and

offensiveness of the conduct, as well as its interference with the employee's work performance.

*Harris*, 510 U.S. at 21, 23.  Other than explaining the specific instances described above, the

plaintiff does not detail the frequency or severity of Henning's conduct.  *See generally* Compl.;

Pl.'s Opp'n.  Moreover, the plaintiff does not explain the offensiveness of the conduct, instead

seeming to assume that the conduct itself was somehow *per se* offensive.  *Id.*  Title VII is not a

"general civility code for the American workplace," *Oncale v. Sundowner Offshore Service, Inc.*,

523 U.S. 75, 75 (1998), and the plaintiff must sufficiently make out a case of hostile work

environment to survive summary judgment.

The defendant, however, makes the same oversight in its motion, and does not

specifically allege that the plaintiff's claim fails because he did not describe the frequency, severity or offensiveness of the conduct that created the alleged hostile work environment. *See generally* Def.'s Mot.  The only prong the defendant does attack is the extent to which the alleged conduct interfered with the plaintiff's work performance, by arguing that the plaintiff suffered from psychological and health issues prior to the alleged creation of a hostile work environment.  Def.'s Mot. at 28-31.  The plaintiff contends that any anxiety or depression the plaintiff may have suffered worsened after the Henning became his supervisor, Compl. ¶ 15, eventually leading to his retirement from the FDIC, *id.* ¶ 16.  Without more, the court lacks sufficient information to decide whether the plaintiff's hostile work environment claim should make it to the jury.  The court, accordingly, orders further briefing on the frequency, severity and offensiveness of the alleged conduct.

## IV.    CONCLUSION

For the foregoing reasons, the court denies the defendant's motion for summary judgment on the plaintiff's discrimination and retaliation claims and orders further briefing on the plaintiff's hostile work environment claim.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of March 2009.

RICARDO M. URBINA
United States District Judge