UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SULTAN M. CHOWDHURY ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 05-2368 (RMU) |
| ) | |
| SHEILA C. BAIR, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT ON HIS HOSTILE WORK ENVIRONMENT CLAIM**

**INTRODUCTION**

This Court recently denied in part Defendant's Motion for Summary Judgment, holding that Plaintiff Sultan M. Chowdhury had adduced sufficient evidence for a jury to find that the Federal Deposit Insurance Corporation (FDIC) discriminated and retaliated against him by denying him a supervisory position, diminishing his job duties and title, blocking his participation in the IJRP, and placing him on a PIP. The Court found that all of these actions were materially adverse to Mr. Chowdhury and that the evidence suggested an unlawful motive behind each of these actions. *See* Memorandum Opinion at 13-14 (citing Pl.'s Opp'n, Ex. 41 at 121 (indicating that Henning stated "we are a Christian family" knowing that the plaintiff is Muslim) and 106 (recalling that Henning told the plaintiff that he scrutinized the plaintiff's work because he had filed an EEO complaint)). The Court also ordered further briefing on Mr. Chowdhury's hostile work environment claim. While the Court agreed that a jury could find that Henning's harassment was motivated by Mr. Chowdhury's race and protected activity, it found that plaintiff had not adequately detailed the frequency and severity of Henning's conduct or

whether it was offensive.  Plaintiff now provides the requested detail in the attached declaration. *See* Pl.'s Ex. 1.

**ARGUMENT**

I.   **A Reasonable Jury Could Find That Humiliation, Fear, and the Threat of Termination Altered Chowdhury's Work Environment.**

As this Court noted in its memorandum opinion, "an employer may not create or condone a hostile or abusive work environment that is discriminatory." Mem. Op. at 14-15 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986).  The Court also made clear that a hostile work environment exists "'[w]hen the workplace is permeated with discriminatory intimidation ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 15 (quoting *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (quoting *Meritor,* 477 U.S. at 65, 67). The relevant factors include: "the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

As is apparent from the attached declaration, Mr. Chowdhury was directly subjected to Henning's harassment almost every day, sometimes multiple times a day.  Mr. Chowdhury recalls that Henning humiliated him at every weekly staff meeting, berated him at every one of his weekly sessions (ostensibly to review Chowdhury's work product), humiliated him by excluding him from every Grade 15 weekly project manager meeting and every biweekly steering committee meeting, and made him feel isolated by publicly announcing and holding weekly

Christian Bible meetings in his office or the FDIC conference

---

[1]For example, while Chowdhury was on approved vacation leave, Henning told the staff that he had hired someone to replace Chowdhury and that Chowdhury was leaving the department. Pl.'s Ex. 1 at 2. Although Mr. Henning said this only once, Mr. Chowdhury felt embarrassment and humiliation from this comment every day after the comment was made as he had to continue to work with these people. The reality is that Henning's hostility pervaded Mr. Chowdhury's working environment.

his declaration.  Henning not only regularly humiliated Chowdhury in front of his co-workers, he also berated and degraded him in one-on-one sessions.  Under the guise of improving his performance, Henning kept Chowdhury in his office and, for up to one and one-half hour, forced him to watch Henning rant about his failings.  Pl.'s Ex. 1 at 3.  Henning's behavior was designed to offend and degrade Chowdhury – he made no attempt to show Chowdhury the alleged deficiency in his work or to tell him how to improve.  *Id.* Rather, he simply grunted at him, pointed at him, made angry faces and gestures at him, raised his voice, and made snide, condescending comments to him.  *Id.*

Defendant attempts to argue that Plaintiff was not subjectively offended by Henning's behavior because he did not state as much at his deposition.  However, Mr. Chowdhury was never asked that question at his deposition (although he did have an opportunity to describe some of Henning's hostile behavior).  Defendant makes much of the fact that when Mr. Chowdhury was asked if he felt threatened by "Mr. Henning being a Christian," he answered, "No.  I don't feel threatened because of his religion."  Pl.'s Dep. at 121-22.  But not feeling offended or threatened by Henning's Christianity does not mean that Chowdhury did not feel isolated or offended by Henning's obvious preference for Christians and his harsh treatment of Chowdhury.

To the contrary, Chowdhury did feel offended, humiliated, and threatened by Henning's actions.  *See* Pl.'s Ex. 1 at 1 ("The frequent announcements and [Christian Bible] meetings were a constant reminder that as a Muslim, I was not considered a full member of the team."), at 2 ("I came to dread the staff meetings because I knew I would be humiliated in some way."); *see also* Pl.'s Opp'n to Summary Judgment, PX 41, Chowdhury Dep. at 432 (testifying that he was "constantly feeling threatened or extra-aware what the hell he's going to say next time").  It is

clear that Henning's harassment interfered with Chowdhury's ability to do his job and ultimately led him to leave work. Pl.'s Ex. 1 at 2 ("This made it hard for me to concentrate on the days that I knew there would be a staff meeting and, because I was very upset by the treatment, it was difficult to get my mind back to work after such treatment."), at 2 ("[I]t was hard for me to face any of my co-workers, knowing that probably all of my co-workers, not just Susan, Jon, Geary, and Tom, looked at me knowing that our boss wanted me gone. This made it hard for me to come to work every day."). Under exceedingly similar circumstances, in *Evans v. Principi*, this Court found that there was "no question that [plaintiff] can establish a hostile work environment claim." *See* 2005 WL 485743, * 4 (denying summary judgment where a supervisor "immediately demonstrated strong disdain and hatred for him as the only male nurse in the unit, verbally disciplined him falsely, berated him, made false accusations against him, screamed and yelled at him openly and frequently; [and] told him at least twice a week over two years that he did not fit in and [that] he should quit, [that] he was not wanted there and [that he] should not have been there in the first place, segregated him from herself and other female nurses, chastised him for what she allowed other female nurses to get away with, conducted a more detailed audit of Plaintiff's work than of any of the other female nurses, and refused to interview him . . . .").

But Henning's harassment of Chowdhury was more pervasive than that alleged in

further humiliation.  This fear of ridicule and of termination made it difficult for Chowdhury to concentrate and thus to perform his duties. *Id.* at 2.  In addition, Henning's harassment caused his co-workers and customers to treat him differently.  *Id.*  His co-workers ostracized him and no longer returned his phone calls. *Id.* at 2. At least one contractor felt he could complain to Henning about Chowdhury when Chowdhury sought contract compliance.  *Id.* Because Henning's acts of abuse occurred almost daily and transformed Chowdhury's work environment such that it was impossible for him to perform his duties, his hostile work environment claim should be decided by a jury.  *See Harris*, 510 U.S. at 23 (noting that in deciding whether harassment is severe or pervasive, the Court should consider the totality of the circumstances including "whether it interferes with an employee's work performance."); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 243 (4th Cir. 2000) ("Whether the harassment was sufficiently severe or pervasive to create a hostile work environment is "quintessentially a question of fact" for the jury."); *Estes v. Georgetown University*, 231 F. Supp. 2d 279, 282 (D.D.C. 2002) (finding that it was, "for the jury to decide whom to believe on the question of whether the evidence taken as a whole crossed the line between mere vulgarity...and offensive conduct that was sufficiently severe or pervasive to alter conditions of employment").  Furthermore, because Henning's abuse caused Chowdhury to suffer disabling depression and anxiety, its severity should be decided by a jury. *See Harris,* 510 U.S. at 370-71 ("Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being."); *see also Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) ("There was testimony that Quiles was subject to such constant ridicule about his mental impairment that it required him to be hospitalized and eventually to withdraw from the workforce.  This evidence was, in our view, sufficient for a reasonable jury to find a hostile

work environment.").

In *Holbrook v. Reno*, the D.C. Circuit provided some guidance on the factors at issue in determining the existence of a hostile work environment. 196 F.3d 255 (D.C. Cir. 1999). There, the Court affirmed a directed verdict on the claim, but outlined the questions that a jury would need to evaluation to determine whether harassment was sufficiently severe or pervasive to violate Title VII:

> Did the nature of the [harassment] change the nature of [plaintiff's] job? Did the [harassment] change how [plaintiff] felt about [his] job? Did it interfere with [his] job performance or make it more difficult for [him] to do [his] job? Did it change how people treated [him]?

Here, Mr. Chowdhury has adduced evidence from which a jury could answer each of these questions in the affirmative and find that he suffered from a hostile work environment.

## II.   Henning's Own Words And Disparate Treatment Provide the Requisite "Linkage" to Chowdhury's Race and Protected Activity.

This Court has already ruled that there is sufficient evidence for a reasonable jury to conclude that Henning harbored a retaliatory and discriminatory animus against Mr. Chowdhury by his own words. *See* Memorandum Opinion at 13-14 (citing Pl.'s Opp'n, Ex. 41 at 121 (indicating that Henning stated "we are a Christian family" knowing that the plaintiff is Muslim) and 106 (recalling that Henning told the plaintiff that he scrutinized the plaintiff's work because he had filed an EEO complaint)). From this evidence of bias, a jury can reasonably infer that Henning's entire campaign of harassment against Chowdhury was based on his religion and EEO activity. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (*en banc*)

(holding that "evidence of discriminatory statements or attitudes on the part of the employer" raises an inference of discriminatory motive); *Morris v. WMATA*, 702 F.2d 1037, 1045-46 (D.C. Cir. 1983) (holding that testimony of other employees regarding retaliation was improperly excluded because it was relevant to defendant's motive); *Miller v. Poretsky*, 595 F.2d 780, 784 (D.C. Cir. 1978) ("[P]roffered evidence of past acts of racial discrimination [towards others] was relevant to prove the landlord's motive in his action towards appellant").

Evidence of disparate treatment is also sufficient to raise an inference of discriminatory and retaliatory motive. Chowdhury noted that Henning was "quite affable with other co-workers," Pl.'s Ex. 1 at 1, and that "no one else was ever treated this way." *Id.* at 2. Indeed, defendant has not offered any evidence that Henning ever humiliated, berated, pointed his finger at, clenched his teeth at, or granted at any other employee. *Cf. Czekalski v. Peters,* 475 F.3d 360, 363 (D.C. Cir. 2007) (reversing grant of summary judgment in sex discrimination case because evidence of disparate treatment of women raised an inference of discrimination, despite testimony that alleged discriminating officials also treated male employees harshly).

## III. This Court Must Reject Defendant's Suggestion Not to Consider the Totality of The Incidents of Harassment in Determining Whether Chowdhury's Claim Should Go To A Jury.

To determine whether a work environment is pervaded with hostility, this Court must consider *all* alleged hostile incidents as a whole, even those it deems "at most bothersome," and those not directly linked to plaintiff's protected status. *See Amtrak v. Morgan*, 536 U.S. 101, 115 (2002) (observing that hostile workplace claims "are based on the cumulative effect of individual acts"); *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 339 (4th Cir. 2006), *cert. denied*, 549 U.S. 1362 (2007) (observing that a hostile work environment, by the very nature of the

claim, is often a result of "an accumulation of discrete instances of harassment"); *Conner*, 227 F.3d at 193-94; *Smith*, 202 F.3d at 242 ("A court must look at all the circumstances to determine whether a work environment is hostile or abusive."); *O'Shea v. Yellow Tech. Servs.*, 185 F.3d 1093, 1097 (10th Cir. 1999) ("[B]ecause conduct which is not [protected category]-based may form a part of the context or environment in which the discriminatory conduct is alleged to have occurred, such conduct may be relevant to, and should be considered in, evaluating a hostile work environment claim."). Accordingly, this Court must reject defendant's argument that Mr. Chowdhury has only alleged discrete acts of discrimination and retaliation.

                                  Respectfully submitted,

                                  _____/s/_____
                                  David H. Shapiro, D.C. Bar # 961326
                                  Swick & Shapiro, P.C.
                                  1225 Eye Street, N.W.
                                  Suite 1290
                                  Washington, DC  20005
                                  (202) 842-0300
                                  Fax (202) 842-1418

                                  Attorneys for Plaintiff