**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SULTAN M. CHOWDHURY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-2368 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 32 |
| | : | | |
| SHEILA C. BAIR, Chairman, | : | | |
| Federal Deposit Insurance Corporation, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING THE DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON THE PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM**

**I.   INTRODUCTION**

This matter is before the court on the defendant's supplemental motion for summary judgment on the plaintiff's hostile work environment claim. The plaintiff, a Bangladeshi Muslim and former Federal Deposit Insurance Corporation ("FDIC") employee, brought suit pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., against the FDIC alleging discrimination, retaliation and hostile work environment. On March 30, 2009, the court denied the defendant's summary judgment motion with respect to the plaintiff's claims of discrimination and retaliation. The defendant has now filed a supplemental motion for summary judgment on the plaintiff's claims of hostile work environment based on his religion and the defendant's allegedly retaliatory motive. Because the plaintiff has demonstrated that material facts are in dispute, the court denies the defendant's supplemental motion for summary judgment on that claim.

## II.   FACTUAL & PROCEDURAL BACKGROUND[1]

The plaintiff was employed by the FDIC from June 1991 to July 2005.  Def.'s Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Statement") ¶¶ 1, 54; Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3.  Mark Henning became the plaintiff's supervisor in 2003, Mem. Op. (Mar. 30, 2009) at 2, and the plaintiff alleges that shortly thereafter Henning created a hostile work environment by making it clear that he did not want the plaintiff on the Central Data Repository ("CDR") team to which they were both assigned, *id*. at 3.  The plaintiff claims that Henning was hostile toward him because of an EEO complaint the plaintiff had filed against his previous supervisor and because the plaintiff is Muslim.  *See generally* Pl.'s Opp'n to Def.'s Supplemental Mot. For Summ. J. ("Pl.'s Opp'n"), Ex. 1 ("Pl.'s Decl.").

The plaintiff filed his complaint on December 9, 2005.  *See generally* Compl.  On March 30, 2009, the court denied the defendant's motion for summary judgment on the plaintiff's discrimination and retaliation claims, *see generally* Mem. Op. (Mar. 30, 2009), and ordered further briefing on the plaintiff's hostile work environment claim, *id*. at 15-17.  Specifically, the court noted that the plaintiff had failed to detail the offensiveness, frequency or severity of the allegedly harassing conduct and that the defendant likewise had failed to address those deficiencies in the plaintiff's allegations.  *Id*. at 16-17.

On May 4, 2009, the defendant filed a supplemental motion for summary judgment on the plaintiff's hostile work environment claim.  *See generally* Def.'s Supplemental Mot. for Summ. J. ("Def.'s Mot.").  The plaintiff opposed the motion on May 19, 2009.  *See generally* Pl.'s Opp'n.  In support of his opposition, the plaintiff submitted a five-page, self-executed declaration, providing his first-hand account of his relationship with Henning.  *See generally*

---

[1] The court's March 30, 2009 Memorandum Opinion contains a detailed description of the background of this case.  *See* Mem. Op. (Mar. 30, 2009) at 2-4.

Pl.'s Decl. The plaintiff specifically alleges that Henning made it known that he would cast an especially critical eye toward the plaintiff's work because of the plaintiff's previous EEO complaint. *Id.* at 1. The plaintiff further proffers that Henning did not consider the plaintiff a "full member of the team" because Henning often referred to the CDR team as a "Christian family," forced the plaintiff to report to a co-worker (as opposed to a supervisor), humiliated the plaintiff at weekly staff meetings and precluded the plaintiff from attending other important meetings. *Id.* at 1-2. Other forms of harassment, the plaintiff explains, included Henning placing the plaintiff on a performance improvement plan ("PIP") and advertising that fact and Henning forcing the plaintiff to attend weekly meetings where Henning would "point his finger . . . clench his teeth and make angry faces the entire time." *Id.* at 3. Because of this conduct, the plaintiff states that he "sought weekly therapy for this stress and eventually had to go on medication for depression. . . . Mr. Henning's harassment ended my enjoyment of [his] job and made it impossible for [him] to continue working." *Id.* at 4-5.

The defendant proffers that the plaintiff still has not alleged conduct that was sufficiently offensive, severe or frequent enough to constitute a hostile work environment. *See generally* Def.'s Reply in Support of Supplemental Mot. for Summ. J. ("Def.'s Reply"). The court turns now to the applicable legal standards and the parties' arguments.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B. Legal Standard for Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id*. at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

### C. The Court Denies the Defendant's Supplemental Motion for Summary Judgment

The defendant maintains that the plaintiff's allegations are too conclusory and lack the specificity necessary to survive summary judgment, Def.'s Reply at 5, and proffers that the facts, even viewed in the light most favorable to the plaintiff, still do not demonstrate that Henning's conduct was frequent, severe, pervasive or abusive enough to create a hostile work environment, *id*. at 1. The plaintiff supplements the record with a declaration in which he sets forth specific facts and incidents that, together, he argues demonstrate that Henning's conduct created a hostile work environment. *See generally* Pl.'s Decl.

The majority of the allegations detailed by the plaintiff in his declaration describe specific conduct and include Henning forcing the plaintiff to report to a co-worker, Pl.'s Decl. at 1, changing the plaintiff's job title, *id*., telling other CDR team members that the plaintiff would be leaving the team, *id*. at 2, questioning the plaintiff's co-worker about the authenticity of the plaintiff's work, *id*., scolding the plaintiff about his communication with a contractor, *id*., placing the plaintiff on a PIP and leaving the PIP paperwork where it was visible to others, *id*. at 3, and interfering with the plaintiff's efforts to secure a transfer, *id*. The plaintiff also alleges that Henning routinely excluded him from important meetings, *id*. at 1-2, humiliated him in front of his co-workers, *id*. at 1, and forced him to endure weekly meetings that were ostensibly intended to improve the plaintiff's writing, but only succeeded in harassing and insulting the plaintiff, *id*.

at 3. As a result of Henning's conduct, the plaintiff states that he "was treated as a second-class member of the office every day, multiple times a day." *Id*.

The nature and frequency of the conduct alleged by the plaintiff raises a question of fact as to whether the plaintiff was subjected to a working environment that was "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris*, 510 U.S. at 21; *see also Test v. Holder*, 614 F. Supp. 2d 73, 83 (D.D.C. 2009) (denying the defendant's motion for summary judgment based on the plaintiff's allegations that the defendant "schedule[ed] meetings expecting that [the plaintiff] could not attend, verbally 'assault[ed]' [the plaintiff], undermin[ed] [the plaintiff's] authority and reduce[ed] his workload, lock[ed] [the plaintiff] out of the building, issu[ed] the plaintiff an unfavorable performance evaluation, den[ied] the plaintiff a performance award, and refus[ed] to discuss [the plaintiff's] 'individual development plan' with him") (internal citations omitted); *El-Haken v. BJY, Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) (holding that calling the plaintiff "Manny" every day for two months "and in emails at least twice a month thereafter" for approximately one year total despite the plaintiff's objections and requests to be called by his actual name, was sufficiently pervasive conduct to create a hostile work environment). Accordingly, this factual dispute should be decided by a jury.

Next, the court looks to whether the plaintiff alleged sufficient facts to establish a causal connection between Henning's conduct and either the plaintiff's religion or his protected EEO activity. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer to discriminate against an employee "*because of* such [employee's] race, color, religion, sex, or national origin") (emphasis added); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (noting that retaliatory motive can be the basis of a hostile work environment claim). The plaintiff alleges that Henning referred to the CDR team as "Christian family" and "repeated this often in [the

plaintiff's] presence, with full knowledge that [the plaintiff] was not a Christian." Pl.'s Decl. at 1.

The defendant argues that the plaintiff contradicts his deposition testimony in his declaration. *See* Def.'s Mot. at 9-12. For example, although the plaintiff noted in his declaration that Henning kept a Bible on his desk, Pl.'s Decl. at 1, he stated in his deposition that the Bible did not bother him and he did not find it offensive, Pl.'s Dep. at 120.

Similarly, in the plaintiff's declaration, the plaintiff states that Henning "called our unit, which he headed, a 'Christian family.'" Pl.'s Decl. at 1. As reflected in the plaintiff's deposition, however, the context of Henning's statement is less clear:

> A   It was made known that [Henning] is a religious person or religious Christian and he came late on Friday mornings because he goes to church.
> Q   Who made it known?
> A   He made it known.
> Q   How did he do that?
> A   In conversations. We are a Christian family or something of that nature.
> Q   He said that to you.
> A   Yes in conversations and he – we knew it because we could not schedule early Friday morning meetings with him because he would be at church with his family.

Pl.'s Dep.[2] at 120-21. Lastly, the defendant points out that, although the plaintiff now alleges that Henning "began organizing weekly lunch hour meetings for the Christians in the office to study the Bible," Pl.'s Decl. at 1, the plaintiff, in his deposition, specifically disclaimed

---

[2] Because the parties attach various portions of the plaintiff's deposition to their briefs, the court cites directly to the plaintiff's deposition with the corresponding page numbers in the deposition transcript. The portions submitted by the parties are attached as exhibits 9, 10, 12, 16, 19, 26, 27, 28, 29 and 30 to the defendant's original motion for summary judgment, exhibits J, R, S, T, GG, PP, QQ, RR, SS, TT and UU to the defendant's statement of material facts not in dispute, exhibit 41 to the plaintiff's opposition to the defendant's original motion for summary judgment and exhibit B to the defendant's reply in support of its original motion for summary judgment.

any knowledge of Henning holding "religious services" at work, Pl.'s Dep. at 121-22.[3]  The plaintiff makes no attempt to clarify these inconsistencies and contradictions.  *See generally* Pl.'s Opp'n.

Although the plaintiff cannot create a material fact by submitting a declaration that contradicts his earlier deposition testimony, *Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991), he can utilize a subsequent affidavit to explain confusion during the earlier testimony, *Franks v. Nimmo*, 796 F.2d 1230, 1237 (2d Cir. 1986).  Whether a lunch-time bible study constitutes a "religious service," Pl.'s Dep. at 121, as the question was phrased in the plaintiff's deposition is a question of fact and a matter of interpretation.  Thus, it is possible that the plaintiff could state, without contradiction, both that Henning held bible studies at work and that he had no knowledge of Henning holding "religious services."  Similarly, although the plaintiff's deposition testimony makes it unclear whether Henning was referring to his own family or the CDR team when he said "we are a Christian family," when viewed in the light most favorable to the plaintiff, a jury could conclude that Henning was intentionally singling out the plaintiff based on his religion.  *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (holding that "[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact").

Regarding the retaliation basis for the plaintiff's hostile work environment claim, the plaintiff alleges that, shortly after becoming the plaintiff's supervisor, Henning told the plaintiff that he had fired people and that he knew the plaintiff's background.  Pl.'s Decl. at 1.  Again, this

---

[3]  The plaintiff testified as follows at his deposition:
      Q    Did [Henning] hold religious services at work?
      A    I don't know that.
      Q    Well I am asking you, do you know if he did?
      A    I don't know that.
Pl.'s Dep. at 121.

creates a material fact surrounding Henning's motivation for his allegedly hostile conduct toward the plaintiff. *See Hunt*, 526 U.S. at 552. Accordingly, the court denies the defendant's supplemental motion for summary judgment on the plaintiff's hostile work environment claim.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the defendant's supplemental motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of January 2010.

RICARDO M. URBINA
United States District Judge